IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

**DENNIS WAYNE BURTON,**                                 **PLAINTIFF,**

VS.                                          CIVIL ACTION NO. 2:06CV216-P-A

**CITY OF SENATOBIA, MISSISSIPPI;
SAMMY WEBB, CHIEF OF POLICE for**
the City of Senatobia, Mississippi in His
Official and Individual Capacities; **OFFICER
GARY RIALES,** in His Official and
Individual Capacities; and **JOHN DOE
DEFENDANTS "A" THROUGH "Z,"**                          **DEFENDANTS.**

## MEMORANDUM OPINION

This matter comes before the court upon Defendants' Motion for Summary Judgment [39]. After due consideration of the motion and the responses filed thereto, the court is prepared to rule.

### I. FACTUAL BACKGROUND

On March 3, 2004 Dennis Wayne Burton was arrested by Senatobia Police Officer Gary Riales and charged with disorderly conduct, resisting arrest, and public drunkenness. Burton alleges that Officer Riales choked him, tightly handcuffed him, and mashed his nose into his face causing a bloody nose. Burton states that he was pushed into the chair and screamed at after Riales took him to the police station. Upon arriving at the Tate County Jail, Burton alleges he was shoved into a desk, maced while handcuffed, and dragged across the floor. Burton does not specify the specific person who allegedly mishandled him at the Tate County Jail. Furthermore, Burton has submitted no proof that he received or required any medical treatment arising from the March 3, 2004 arrest.

On June 25, 2004 Municipal Court Judge John Lamar found Burton guilty for disorderly conduct, resisting arrest, and public drunkenness. Burton has since appealed those convictions to

1

the Tate County Circuit Court. That appeal is still pending.

On September 30, 2005 Burton was brought before Judge Lamar for contempt of court for failure to pay accrued fines of approximately $1,559.90. Judge Lamar sentenced Burton to six months in the county jail. Burton avers that he was not provided a lawyer despite his indigent status.

On December 7, 2005 Judge Lamar ordered that Burton be released after sixty-eight days in jail.

On February 8, 2006 Judge Lamar issued an arrest warrant for Burton for contempt of court for continued failure to pay his past-due fines of $1,559.90. It is undisputed that pursuant to Mississippi law, serving a jail sentence for failure to pay fines does not render the fines paid.

On July 3, 2006, Officer Billy Burroughs served the February 8, 2006 arrest warrant upon Burton. Burton was held in jail for nine days with a cash bond for $1600.00 which Burton did not pay. Burton alleges that Officer Burroughs handcuffed him tightly when he arrested him. Burton has submitted no evidence that he received or required any medical treatment arising from the July 3, 2006 arrest.

On July 12, 2006 Burton was brought before Judge Lamar who found Burton guilty of contempt of court for failure to pay his past-due fines. Burton avers that he was not provided a lawyer. During the hearing, Judge Lamar orally banished the plaintiff from Senatobia until he paid his fines. Burton filed no appeal from this judgment. The February 8, 2006 Arrest Warrant that was served on July 3, 2006 has a hand-written note at the bottom, dated July 12, 2006, nine days after the warrant was served, "to pay fine or be banished from Senatobia."

On July 17, 2006 Burton was arrested by Officers Burroughs and Riales after they observed Burton within the city limits of Senatobia in violation of Judge Lamar's banishment order. Officer

Riales was present during the July 12, 2006 hearing during which Judge Lamar orally banished Burton from Senatobia until such time he paid his fines. Burton alleges that he was tightly handcuffed and treated in a rough manner by Officer Riales during this arrest. The Tate County Jail would not process Burton because of his complaints that his right hand was injured. Tate County EMTs arrived and concluded that Burton had a "very small abrasion" on the inside of his right wrist, and that Burton had a strong grip, no bleeding, no deformity, and no swelling. Burton was transported by police cruiser to the North Oaks Regional Medical Center where he was examined. The x-ray from the hospital indicated that Burton had a "normal wrist." Burton avers that he had to walk home from the hospital because the vehicle he had been driving was impounded. He states that he was sent the bill from the EMTs and the hospital.

Burton alleges that though he was inside the city limits when arrested on July 17, 2006, he had received no written order of banishment from Judge Lamar. He does not dispute, however, that Judge Lamar orally banished him until he paid his fines during the July 12, 2006 hearing for contempt of court.

On July 21, 2006 Judge Lamar entered a nunc pro tunc Order "in regard to the warrant for contempt of the Court's previous orders against the defendant." The Order states in pertinent part:

> 2. The defendant has had multiple criminal convictions before this Court over the past five (5) years.
> 3. The defendant has outstanding fines due and owing to the City of Senatobia in the sum of $1,559.90.
> 4. The defendant has the ability to pay these fines and the Court has previously ordered that he pay these fines at the rate of twenty-five dollars ($25.00) per week.
> 5. The defendant has previously agreed to work off his fines through the city's work program, but failed to comply with the program and the city's director of the work program refuses to allow him to re-enter the work program based on his prior actions while serving in the program.
> 6. The Court further finds that the defendant was incarcerated in the Tate County Jail for his previous criminal conduct, and his previous adjudication contempt [sic] for

non-compliance of this Court's previous orders.

7. The defendant was released from his latest stint in the Tate County Jail on December 7, 2005 in order to allow him to earn money to pay off his fines at the rate of twenty-five dollars ($25.00) per week.

8. The defendant has not paid one (1) payment on his back fines since his release on December 7, 2005.

9. The Court further finds that the defendant is in wilful and criminal contempt of this Court's previous orders, and in light of his previous conduct, the defendant shall be banished from the City of Senatobia, from this point until he can present proof that he can be a productive citizen and comply with the laws of the State of Mississippi.

10. The Court further finds that if the defendant comes to the Court and makes arrangements to pay these fines, then he will be allowed back into the City of Senatobia. Otherwise, he shall be banished from this point until he can present proof that he can be a productive citizen and comply with the laws of the State of Mississippi.

IT IS, THEREFORE, ORDERED AND ADJUDGED as follows:

1. That the defendant, Dennis W. Burton, is in wilful and criminal contempt of this Court's previous orders and shall be banished from the City of Senatobia until such time as he comes to the Court and makes arrangements to pay these fines or he can present proof that he can be a productive citizen and comply with the laws of the State of Mississippi.

SO ORDERED AND ADJUDGED this the 12th day of July, 2006 and entered nunc pro tun on this the 21st day of July, 2006.[1]

Trial for the July 17, 2006 charge of disorderly conduct was scheduled for September 13, 2006. Immediately before trial, the city prosecutor changed the charge from disorderly conduct to contempt of court for failure to pay the past-due fines. During this trial, the plaintiff was represented by counsel. Burton was found guilty of contempt for failure to pay the fines and was sentenced to 90 days in jail plus an additional 87 days from the balance of the six-month sentence imposed on September 30, 2005 for the first charge of contempt of court for failing to pay fines.

---

[1]Burton alleges that he did not receive notice of this July 21, 2006 Order of banishment until his attorney had issued subpoenas in preparation for the September 13, 2006 trial resulting from the July 17, 2006 arrest for contempt of court.

Burton avers that he attempted to file an out-of-time appeal of Judge Lamar's July 12, 2006 nunc pro tunc Order. However, Burton has not alleged that he received permission to file that appeal. Burton also appealed the September 13, 2006 judgment to the Tate County Circuit Court, which is still pending.

On September 18, 2006 Burton filed a petition for writ of corum nobis with the Municipal Court, arguing that pursuant to Miss. Code Ann. § 99-19-20, he could only serve one day per $25.00 owed. On that same day, Burton was released from jail. It is undisputed that Burton served 114 days when he should have only served 63 days; thus, Burton served 51 days more than he should have pursuant to § 99-19-20.

On December 20, 2006 Burton filed the instant Complaint against the City of Senatobia and Chief of Police Sammy Webb and Officer Gary Riales in their official and individual capacities. The Complaint levies state law claims of: (1) assault and battery, (2) gross negligence, and (3) deprivation of rights under the Mississippi Constitution. The Complaint also contains the following federal claims via 42 U.S.C. § 1983: (1) unlawful arrest, (2) denial of due process, (3) excessive force, (4) unreasonable search and seizure, (5) denial of the right to counsel, (6) excessive bail, fines, and punishment, and (7) failure to train and/or supervise.

The Complaint seeks the following relief: (1) a declaratory judgment that the defendants' actions violated his federal constitutional rights; (2) a declaratory judgment that the defendants' actions violated his Mississippi constitutional rights; (3) a temporary restraining order, preliminary injunction, and permanent injunction enjoining the defendants from further violations of his state and federal constitutional rights; (4) compensatory damages of $1 million and punitive damages of $5 million; and (5) attorney fees and litigation costs pursuant to 42 U.S.C. § 1988.

On December 7, 2007 the defendants filed their motion for summary judgment which is now fully briefed. The defendants argue that the plaintiff's state law claims are barred by the provisions of the Mississippi Tort Claims Act, including judicial and law enforcement exemptions to liability thereunder. The defendants argue that the plaintiff's § 1983 claims fail against Senatobia because (1) Senatobia cannot be held liable for the actions of Webb or Riales via respondeat superior; (2) there is a lack of the required policymaker; (3) there is no proof that constitutional violations occurred given there was probable cause for all three of the arrests and there is no evidence of excessive force but rather *de minimis* injuries with little or no medical proof; (4) there is no showing that the allegedly unconstitutional conduct is directly attributed to a policy or custom of Senatobia; and (5) there is no evidence evincing a failure to train and/or supervise. Defendants maintain that the § 1983 claims against Chief Webb and Officer Riales in their individual capacities fail because of a lack of evidence of constitutional violations as well as the doctrine of qualified immunity. Furthermore, the defendants contend that punitive damages are barred as a matter of law.

## II. DISCUSSION

### A. Summary Judgment Standards

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they

may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (l986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d l026, l031 (5th Cir. l982); *Environmental Defense Fund v. Marsh*, 65l F.2d 983, 99l (5th Cir. l98l); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d l2ll, l2l3 (5th Cir. l969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party.

*Anderson*, 477 U.S. at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*. at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*. at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

**B. State Law Claims**

The Complaint levies state-law claims against "defendants" for assault and battery, gross negligence, and deprivation of Mississippi constitutional rights.

The Mississippi Tort Claims Act is the exclusive remedy against a governmental entity or its employee. Miss. Code Ann. § 11-46-7(1). The plaintiff complied with the 90-day notice requirement of § 11-46-11(1). Subsection (3) requires all actions to:

> be commenced within one (1) year after the date of tortious, wrongful or otherwise objectionable conduct on which the liability phase of the action is based, and not after; provided, however, that the filing of a notice of claim as required by subsection (1) of this section shall serve to toll the statute of limitations for a period of ... one hundred twenty **(120) days** from the date the chief executive officer or other statutorily designated official of a **municipality** ... receives notice of the claim, **during which time no action may be maintained by the claimant unless the claimant has received a notice of denial of claim**. After the tolling period has expired, the claimant shall then have an additional ninety (90) days to file any action against the governmental entity served with proper claim notice.

Miss. Code Ann. § 11-46-11(3) (emphasis added).

The plaintiff maintains that he served the City Clerk of the City of Senatobia with a notice of claim under the MTCA on September 29, 2006. Thus, pursuant to § 11-46-11(3), any state-law

claims arising from actions occurring before September 29, 2005 are barred – *e.g.*, the plaintiff's March 3, 2004 arrest. However, § 11-46-11(3) also requires that the plaintiff have waited for 120 days after serving his notice of claim to the municipality before filing suit. In other words, pursuant to the MTCA, the plaintiff should have waited until January 27, 2007 to file suit since he has provided no evidence that he ever received a denial of claim from Senatobia.

The defendants are correct that the Mississippi Supreme Court has evinced strict compliance with the requirements of Miss. Code Ann. § 11-46-11. *E.g., South Cent. Regional Medical Center v. Guffy*, 930 So.2d 1252, 1258-59 (Miss. 2006); *University of Mississippi Medical Center v. Easterling*, 928 So.2d 815, 819-20 (Miss. 2006). The court concludes that since the plaintiff filed his lawsuit 38 days too early, all three of his state-law claims should be dismissed with prejudice for failure to comply with § 11-46-11(3)'s 120-day waiting period requirement for municipalities.

## C. Federal Claims

The plaintiff seeks relief via § 1983 for the following claims: unlawful arrest in violation of the Fourth Amendment; denial of due process in violation of the Fourteenth Amendment; excessive force in violation of the Eighth and Fourteenth Amendments; unreasonable search and seizure in violation of the Fourth Amendment; deprivation of the right to counsel in violation of the Sixth Amendment; excessive punishment in violation of the Eighth Amendment; and failure to train and/or supervise.

**1. § 1983 Claims Against Senatobia and Chief Webb and Officer Riales in Their Official**

**Capacities**

"Municipal liability under ...§ 1983 requires three elements in addition to the underlying claim of a violation of rights: 'a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom." *Cox v. City of Dallas, Texas*, 430 F.3d 734, 748 (5th Cir. 2005).

"An 'official policy' is either a policy statement, ordinance, regulation, etc. that has been officially adopted by a policymaker, or a persistent, widespread practice of officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id*. "The policymaker must have either actual or constructive knowledge of the alleged policy." *Id*. "Actual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc).

**a. Right to Counsel and Excessive Punishment Claims**

It is clear that Municipal Judge Lamar is not a policymaker for the City of Senatobia. *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) ("We have repeatedly held ... that a municipal judge acting his or her judicial capacity to enforce state law does not act as a municipal official or lawmaker."). The two § 1983 claims logically pertaining to Judge Lamar only, despite the Complaint's use of the term "defendants," are Count 7's denial of the right to counsel claim and Count 8's excessive bail, fines and punishment claim. Therefore, since Judge Lamar was not named

as a defendant, nor is he a policymaker as a matter of law, Counts 7 and 8 must necessarily fail for the absence of a policymaker as required by *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Even if Judge Lamar had been named as a defendant, he would be entitled to judicial immunity pursuant to *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

**b. Remaining Federal Claims**

It is clear that Officer Riales is not a policymaker. Therefore, Senatobia cannot be held liable for any of the plaintiff's § 1983 claims against Officer Riales in his official capacity because "a municipality may not be held liable under section 1983 on the basis of *respondeat superior*. A municipality's liability under section 1983 requires, among other things, either the unconstitutional action of municipal policymakers or a municipal policy." *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004).

Since Judge Lamar cannot be a policymaker as a matter of law, Chief Webb, as the Chief of Police, is the only potential policymaker with respect to the plaintiff's claims of unlawful arrest, denial of due process, excessive force, unreasonable search and seizure, and failure to train and/or supervise.

**(I) Unlawful Arrest**

Count 1 of the Complaint asserts a claim for unlawful arrest, *i.e.*, "The actions of the Defendants in arresting the Plaintiff without probable cause and without warrant having been issued for his arrest constituted an unlawful arrest and denied rights guaranteed to Plaintiff by the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983."

With regard to the basic test for § 1983 municipal liability, though Chief Webb would be a policymaker regarding the manner in which people are arrested by his officers, the plaintiff must still

show a specific policy or custom which is the moving force behind the three allegedly unlawful arrests and that the three arrests were in fact unlawful.

The record is devoid of any evidence of an official policy or custom requiring Senatobia Police Officers to arrest people without probable cause or a warrant. Furthermore, the court concludes that the plaintiff has not demonstrated a genuine issue of material fact indicating that any of the three subject arrests were done without probable cause and/or a valid arrest warrant.

The July 12, 2006 arrest by Officer Burroughs, who is not a defendant in this case, resulted from an arrest warrant issued by Judge Lamar. The July 17, 2006 arrest was clearly based on probable cause given that it is undisputed that Officer Riales witnessed the plaintiff in the city limits after having been present when Judge Lamar had orally banished the plaintiff from Senatobia on July 12, 2006 until he paid his fines.

In any event, the plaintiff's § 1983 claim for all three unlawful arrests is barred by the *Heck* doctrine as well as the *Rooker/Feldman* doctrine.

In *Heck v. Humphrey*,, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, **or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid**, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. 477, 486-97(1994) (emphasis added). The phrase "or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" in this instance would include the plaintiff's claim of unlawful arrests. Since the plaintiff has not shown that his convictions resulting from the three subject arrests were ever reversed or otherwise declared invalid, his § 1983

12

claim for unlawful arrest is not cognizable under § 1983 until he does so. *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996). Indeed, there is a pending appeal in the Circuit Court of Tate County of the June 25, 2004 conviction by Judge Lamar resulting from the March 3, 2004 arrest and another pending appeal for the September 13, 2006 conviction resulting from the July 17, 2006 arrest.

Under the *Rooker/Feldman* doctrine, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. DeGrandy*, 512 U.S. 997, 1005-6 (1994). "[A] United States district court has no authority to review final judgments of a state court in judicial proceedings." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). The *Rooker/Feldman* doctrine bars claims that are "inextricably intertwined" with a state court's ruling. *Chrissy F. v. Miss. Dept. of Pub. Welfare*, 995 F.2d 595, 599 (5th Cir. 1993).

If it were to attack the validity of the three subject arrests under the Fourth Amendment, this court would be running afoul of the *Heck* and *Rooker/Feldman* doctrines. The court therefore concludes that the plaintiff's § 1983 claim for unlawful arrest should be dismissed.

**(ii) Denial of Due Process and Unreasonable Search and Seizure**

Count 2 of the Complaint seeks recovery for denial of due process. More specifically, the Complaint states in this regard: "The arrest, search, and detention of Plaintiff for alleged non-payment of a fine, *i.e.*, criminal contempt, occurring outside the presence of the court without prior notice and opportunity to appear and defend, violated Plaintiff's Federal Constitutional right to due process under the Fourteenth Amendment and 42 U.S.C. § 1983."

13

Count 4 asserts unreasonable search and seizure, *i.e.*, "The warrantless arrest, search, handcuffing and detention of the Plaintiff without probable cause violated Plaintiff's right to be free from unreasonable searches and seizures under the Fourth Amendment of the United States Constitution. Further, Defendants' actions in restraining and detaining Plaintiff were unreasonable in light of the surrounding circumstances."

As stated above, a § 1983 claim against the municipality of Senatobia requires, among other things, a policymaker. Neither Judge Lamar nor Officer Riales can be considered policymakers regarding the plaintiff's claims for denial of due process or unreasonable search and seizure. Such a policymaker in this instance would have to be Chief Webb. However, the plaintiff has demonstrated no genuine issue of material fact that Chief Webb had an official policy or custom of encouraging officers, specifically Officer Riales and perhaps Officer Burroughs, to deny due process rights or to conduct unreasonable seizures.

In any event, the plaintiff's claims for denial of due process and unreasonable search and seizure are barred by the *Heck* doctrine and the *Rooker/Feldman* doctrine for the same reasons discussed above concerning her claim for unlawful arrest. Thus, the court concludes that these claims should be dismissed with prejudice.

**(iii) Excessive Force**

Count 3 asserts a § 1983 claim for excessive force, *i.e.*, "The actions of the Defendants in arresting Plaintiff and manhandling him constituted the use of excessive force and violated rights secured to Plaintiff by the Eighth and Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983."

The policymaker in this instance cannot be Judge Lamar or Officer Riales as a matter of

law. However, Chief Webb, in theory could be a policymaker regarding his officers' use of excessive force. Nevertheless, the plaintiff has created no genuine issue of material fact indicating that Chief Webb had an official policy or custom in encouraging his officers to use excessive force.

Neither the *Heck* nor the *Rooker/Feldman* doctrines apply to the plaintiff's excessive force claim because whether or not the officers used excessive force when arresting the plaintiff has no bearing on the validity of his convictions. *E.g.*, *Hudson v. Hughes*, 98 F.3d 868, 872-3 (5th Cir. 1996).

Despite the Complaint's citation to the Eighth and Fourteenth Amendments, an excessive force claim is analyzed under the Fourth Amendment. *Graham v. Conner*, 490 U.S. 386, 394-95 (1989). To succeed on an excessive force claim, a plaintiff bears the burden of showing that he "suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004).

The Fifth Circuit requires a plaintiff asserting an excessive force claim to have "suffered at least some form of injury" but the "injury must be more than a de minimis injury." *Glenn v. City of Tyler*, 242 F.3d 207, 314 (5th Cir. 2001). Furthermore, the Court in *Glenn* held that "handcuffing tightly, without more, does not amount to excessive force." *Id*. What is more, as with any claim requiring the element of an injury, the plaintiff must have medical proof that he was in fact injured. The plaintiff submits no medical proof that he was injured during the March 3, 2004 arrest or during the July 3, 2006 arrest. The medical proof submitted for injuries arising from the July 28, 2006 arrest evince only that he suffered a slight abrasion on the inside of his right wrist while the x-ray concluded that his wrist was normal. Nonetheless, the injuries alleged to have occurred from

15

all three arrests are mere de minimis injuries which cannot rise to the level of excessive force as a matter of law. *See Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005).

Accordingly, the plaintiff's § 1983 excessive force claim should be dismissed with prejudice.

### (iv) Failure to Train and/or Supervise

Count 9 asserts a claim of failure to train and/or supervise, *i.e.*, "Defendants have failed to provide adequate training to law enforcement officers. Further, Defendants have failed to supervise law enforcement officers."

The policymaker at issue here would be Chief Webb. "When, as here, a plaintiff alleges a failure to train or supervise, 'the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). A municipality acts with "deliberate indifference" in training if the training's inadequacy is "obvious ... and likely to result in violations of constitutional rights." *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992). "An adequate training program must 'enable officers to respond properly to the usual and recurring situations with which they must deal." *Id*. (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a 'policy' as defined by our prior cases – can a city be liable for such a failure under § 1983." *City of Canton*, 489 U.S. at 389.

It is undisputed that Officer Riales has been certified as a law enforcement officer by the State of Mississippi, has had many years of experience, and has completed the minimum training

mandated by the State. The plaintiff has created no genuine issue of material fact supporting any of the three elements required for a failure to train claim. Therefore, the court concludes that the claim should be dismissed with prejudice.

## 2. § 1983 Claims against Chief Webb and Officer Riales in their Individual Capacities

### a. Qualified Immunity

The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

When applicable, "qualified immunity protects public officials from both recovery of damages and trial. As a prerequisite, a plaintiff 'must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation itself.'" *Roberts v. City of Shreveport*, 397 F.3d 287, 291-92 (5th Cir. 2005) (internal citations omitted).

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). When "evaluating § 1983 claims based on allegedly unconstitutional conduct by state actors [courts] should conduct a two-prong inquiry to determine whether the state actors are entitled to qualified immunity. 'The first inquiry must be whether a constitutional right would have been violated on the facts alleged.' 'If a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established.' Ultimately, a state actor is entitled to qualified immunity if his or her conduct was objectively

reasonable in light of the legal rules that were clearly established at the time of his or her actions." *McClendon*, 305 F.3d at 322-323 (citing *Siegert v. Gilley*, 500 U.S. 226, 232-34 (1991); *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Wilson v. Layne*, 526 U.S. 603, 614 (1999)).

Essentially, "qualified immunity shields officers from a damage suit if they could have reasonably believed their actions to be lawful 'in light of clearly established law and the information the [arresting] officers possessed. Even if law enforcement officials erred in concluding that probable cause existed to arrest [the plaintiff], they would be entitled to qualified immunity if their decision was reasonable, albeit mistaken. ...[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law." *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993) (internal citations omitted).

The plaintiff does not specifically delineate which claims he asserts against Chief Webb and/or Officer Riales in their individual capacities.

With regard to Chief Webb, the chief of police cannot be held vicariously liable for the actions of his subordinates. *Baskin v. Parker*, 602 F.2d 1205, 1207-08 (5th Cir. 1979). Burton must establish that Chief Webb "was personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981). Burton does not argue that Chief Webb was personally involved in his claims for unlawful arrest, denial of due process, excessive force, or unreasonable search and seizure. Rather, it appears that the only claim that is logically centered upon Chief Webb is the failure to train and/or supervise claim. As the court concluded above, the plaintiff has failed to create a genuine issue of material fact that there was a

failure to train and/or supervise Officer Riales, especially given that Officer Riales has been certified by the State of Mississippi as a law enforcement officer, has met all of the minimum training standards required by the State, and has had several years of experience as a police officer. Therefore, the plaintiff has not demonstrated that Chief Webb is not entitled to qualified immunity in his individual capacity since the plaintiff has not demonstrated that a constitutional right would have been violated on the facts alleged.

As to Officer Riales, the claims that seem applicable to him in his individual capacity include two unlawful arrests (*i.e.*, July 3, 2006 and July 18, 2006), excessive force, and unreasonable search and seizure. The court has already concluded that the plaintiff's unlawful arrest and unreasonable search and seizure claims are barred by the *Heck* doctrine and the *Rooker/Feldman* doctrine. This leaves the excessive force claim. As discussed above, the court has already concluded that even on the facts alleged, the plaintiff excessive force claims fails as a matter of law because of the lack of medical proof of otherwise *de minimis* injuries. Thus, the plaintiff cannot meet his burden in meeting the first prong of the qualified immunity test: whether a constitutional right would have been violated on the facts alleged. Accordingly, the court concludes that Officer Riales is entitled to qualified immunity to all of the plaintiff's claims against him in his individual capacity.

### III. CONCLUSION

For the reasons discussed above, the court concludes that Defendants' Motion for Summary Judgment [39] should be granted and that all of the plaintiff's claims should be dismissed with prejudice. Accordingly, the court shall enter a Final Judgment,

**THIS DAY** of March 3, 2008.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE